# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| MALINDA COOLEY, | ) |
| *Plaintiff*, | ) |
| v. | ) No. 3:15-cv-467 |
| | ) REEVES/SHIRLEY |
| EAST TENNESSEE HUMAN RESOURCE AGENCY, INC., | ) |
| *Defendant*. | ) |

## MEMORANDUM OPINION AND ORDER

Malinda Cooley was a van driver for East Tennessee Human Resource Agency, Inc. In that role she transported ETHRA clients, who were occasionally elderly or disabled. Because Cooley would have to lift these clients' wheelchairs and help them in and out of the van, the job required that she be able to lift fifty pounds. Cooley held this position from March 2006 until she was fired on August 27, 2015.

Cooley also had back problems that required her to take painkillers. In February 2015, Cooley slipped on ice and fell, worsening her back problems. Cooley requested leave under the Family and Medical Leave Act of 1993 so that she could undergo back surgery. ETHRA granted her request, and Cooley began her FMLA leave on May 21. Her painkiller use increased.

Cooley exhausted her twelve weeks of FMLA leave on August 12. Her personal doctor, Bradley Hall, cleared her to work on August 24, with a thirty-pound limit for pushing, pulling, and lifting until October. Before Cooley could return to work, however, ETHRA required her to receive a medical exam to ensure that she was fit to return to work. The exam was performed by Dr. John McElligott. On August 27, Dr. McElligott deemed Cooley unfit to return to work because of her

1

continued painkiller use. Mere moments after the exam ended, he informed ETHRA that Cooley had failed her exam, though ETHRA management never learned why.

Cooley's executive director, Gary Holiway, soon learned that Cooley had failed. He made the call that Cooley had to be fired because she could not return to work. The human-resources coordinator completed Cooley's separation notice, which Norman signed for Holiway.

Meanwhile, Cooley trudged to the ETHRA office to tell management that she had not passed her exam. She walked into the office, handed her exam paperwork to someone, walked out, got in her car, and drove off. While driving away, Cooley received a call from her supervisor, Melinda Norris, asking her to come back to the office. Cooley returned, bringing along a letter requesting an accommodation for her thirty-pound restriction; the parties dispute whether Cooley had previously sent the letter to ETHRA and whether ETHRA had received it. When Cooley returned to the office, she was met by Norris, Norman, and Transportation Director Mike Patterson. They told Cooley that she could not return to work because she had failed her fitness exam, and they gave her the separation notice. Cooley left either in tears or in a rage.

Cooley sued ETHRA on October 20, 2015, and an amended complaint followed in April 2016. She alleges that ETHRA interfered with her entitlement to FMLA benefits and fired her for taking FMLA leave. She also asserts that ETHRA refused to accommodate her thirty-pound restriction, in violation of the Americans with Disabilities Amendments Act of 2008.

Now before the Court are cross-motions for summary judgment. For the following reasons, Cooley's motion is denied and ETHRA's is granted.

# I

Summary judgment is proper only if there is no genuine dispute on any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A dispute is genuine

if a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*; *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 847 (6th Cir. 2016).

The moving party bears the initial burden of showing that there is no genuine issue of material fact on any element of the other party's claim or defense. *Stiles*, 819 F.3d at 847. In determining whether this burden is satisfied, the Court views all evidence in the light most favorable to the nonmoving party and draws all inferences in her favor. *Anderson*, 477 U.S. at 255. Once the movant has satisfied this burden, the other party must identify specific facts in the record that raise a genuine issue of material fact. *Stiles*, 819 F.3d at 847. If this is not done, summary judgment is granted. FED. R. CIV. P. 56(a). The Court does not weigh evidence, judge witnesses' credibility, or decide the truth of the matter. *Anderson*, 477 U.S. at 249.

## II

Cooley brings claims for FMLA interference, FMLA retaliation, and failure to accommodate in violation of the ADA. The FMLA claims can be proved through either direct or indirect evidence. Cooley offers only indirect evidence. Her claims are thus governed by the three-step *McDonnell Douglas* test.[1] *See Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012) (interference); *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (retaliation).

The first step falls on Cooley. *Donald*, 667 F.3d at 776. She must make a prima facie showing of all the elements of her claim. ETHRA asserts that Condrone cannot meet this task. But if she does, then the Court proceeds to the second step. *Id.* The burden shifts to ETHRA to show that it had a legitimate reason for firing Cooley. *Id.* Finally, if it meets this demand, then the burden

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).

shifts back to Cooley to show that this reason was pretextual. *Id.* ETHRA has offered a reason for firing Cooley. It contends that this reason is legitimate and that Cooley cannot show it to be pretextual.

## A

Although Cooley has brought two FMLA claims against ETHRA, ETHRA offers only one reason for firing her, and Cooley levels one set of arguments against this reason. The first issue, then, is whether Cooley has made a prima facie showing on her FMLA claims.

### 1

Cooley has stated a prima facie case of FMLA interference. To state a prima facie case of FMLA interference, Cooley must show that

- she was eligible for FMLA leave;
- ETHRA was an "employer" as defined by the FMLA;
- she gave ETHRA notice of her intention to take leave; and
- ETHRA denied her the FMLA benefits she was entitled to.

*Donald*, 667 F.3d at 761. ETHRA contends that Cooley cannot satisfy the last element, while Cooley counters that she has clearly satisfied it.

Cooley is correct. An employee is entitled to have her job back when she returns from FMLA leave. 29 C.F.R. § 825.214; *see also* 29 U.S.C. § 2614(a)(1). Even though Cooley had used up her FMLA leave, ETHRA would not let her return to work. At the prima facie stage, that is all that matters. Cooley has satisfied the first *McDonnell Douglas* step of her interference claim.

### 2

Cooley has also stated a prima facie case of FMLA retaliation. To state a prima facie case of FMLA retaliation, Cooley must show that

• she was engaged in activity protected by the FMLA;

• ETHRA knew that she was engaged in such activity;

• after learning about this activity, ETHRA took an adverse employment action against her; and

• there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald*, 667 F.3d at 761. The last element is at issue.

Cooley has made a prima facie showing of causation. To show causation for FMLA retaliation, the plaintiff "must show some type of retaliatory intent." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308 (6th Cir. 2016). Cooley provides four pieces of evidence to show retaliatory intent: ETHRA's failure to remind her of its leave-without-pay policy before firing her; the fact that Holiway did not consult Norris before deciding to terminate Cooley; ETHRA's failure to second-guess Dr. McElligott's opinion that Cooley was unfit to return to work; and the timing of her termination.

Only the timing reveals a prima facie case of FMLA retaliation. First, and to be sure, ETHRA allows employees to take up to ninety days of approved leave without pay. [D. 60 Ex. 14 at 14]. Cooley claims that ETHRA never told her about this leave and that, had she known about it, she would have taken it rather than be fired.

There are several problems with this claim. Above all, Norris testified that Norman actually did tell Cooley that she could take leave without pay if needed. [D. 41 Ex. 6 at 33:13–20]. But even if Norman did not remind Cooley about the policy, Cooley was supposed to already know about it. ETHRA's personnel handbook contains the leave policy. [D. 60 Ex. 14 at 14]. Cooley had access to the handbook, and she even signed a form acknowledging that she should become

4

familiar with its information. [D. 34 Ex. 11 at 150:8–15; D. 48 Ex. 1]. Of course, there is also no evidence suggesting that ETHRA had any duty to remind Cooley of the leave policy before firing her. Finally, Cooley's affidavit states that she would have taken leave had she known about the policy, but this directly contradicts her prior testimony. [D. 34 Ex. 11 at 82:11–19]. And "a party cannot avoid summary judgment through the use of self-serving affidavits that contradict prior sworn testimony." *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 303 (6th Cir. 1998). ETHRA's alleged failure to explicitly remind Cooley of the leave policy does not suggest any retaliatory intent.

Second, there is evidence suggesting that Holiway failed to consult Norris before deciding to fire Cooley. [D. 60 Ex. 17 at 28:10–29:6]. But if anything, this failure actually lessens the chance that a retaliatory intent was behind Cooley's termination. Holiway was never notified when an employee sought FMLA leave, and he played no role in deciding whether to bring back an employee after her leave ends. [*Id.* Ex. 15 at 13:1–9]. If Holiway had no idea that Cooley was on FMLA leave or trying to return from it, then he could not have fired her for taking that leave.

Third, it is true that Dr. Hall cleared Cooley for work with restrictions, while Dr. McElligott did not. It also appears that ETHRA made no effort to determine the reason for this difference in opinion. But this does not reveal any retaliatory intent. Instead, it can be explained by the fact that Dr. McElligott was certified to conduct fitness exams, while Dr. Hall was not. Cooley's job required her to hold a non-excepted interstate commercial driver's license, which she held. [D. 63 Ex. 1]. And a CDL driver who has suffered a job-impairing injury must be certified as physically qualified to return to work. 49 C.F.R. § 391.45(c). The exam must be performed by someone on the U.S. Department of Transportation's National Registry of Certified Medical Examiners. *Id.* § 391.43(a). Dr. McElligott is on the registry; Dr. Hall is not. *See National Registry of Certified*

5

*Medical Examiners*, U.S. DEP'T OF TRANSP., goo.gl/zQ1aYr (last visited Mar. 13, 2017). Had ETHRA followed Dr. Hall's advice over Dr. McElligott's, both Cooley and ETHRA could have been penalized. *See* 49 U.S.C. §§ 31302, 31304(a)(1), 521. ETHRA's refusal to follow Dr. Hall's advice over Dr. McElligott's suggests prudence, not retaliation.

That leaves the timing of Cooley's termination. "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). ETHRA fired Cooley two weeks after her FMLA leave ended and on the same day that she tried to return to work. These short time gaps are small enough to make out a prima facie case of causation. *See, e.g.*, *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (finding prima facie causation where employee was fired on the day she was scheduled to return after three months of FMLA leave). Cooley has shown a prima facie case of retaliation.

### B

Cooley 's FMLA claims satisfy the first *McDonnell Douglas* step. Under the next step, ETHRA must show that it had a legitimate, nondiscriminatory reason for firing Cooley. *Donald*, 667 F.3d at 776. ETHRA offers the fact that Cooley was not cleared to return to work.

This is a legitimate, nondiscriminatory reason for firing Cooley. As explained in Subsection II.A.2, Cooley failed a mandatory fitness exam. Hence she could not requalify for her job and return to work. ETHRA has satisfied its burden under the second *McDonnell Douglas* step.

6

## C

For the last *McDonnell Douglas* step, Cooley must provide evidence suggesting that ETHRA's reason for firing her is pretextual. *Donald*, 667 F.3d at 776. She can demonstrate pretext by showing that ETHRA's stated reason has no basis in fact, did not actually motivate the decision to fire her, or was insufficient to warrant the termination. *O'Donnell v. City of Cleveland*, 838 F.3d 718, 727 (6th Cir. 2016). And regardless of which approach Cooley takes, she must show both that ETHRA's stated reason is false and that discrimination was the real reason. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). Cooley offers six pieces of evidence to show that she was fired not for failing to pass her fitness exam but rather for an FMLA reason. None suggest pretext.

First are ETHRA's allegedly shifting justifications, which can be evidence of pretext. *See Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 269 (6th Cir. 2010). The separation notice given to Cooley lists only her failure to pass the fitness test. [D. 60 Ex. 10]. Norman answered in an interrogatory that Cooley was also fired because her outburst at the meeting amounted to insubordination. [D. 41 Ex. 15 at 2]. And according to Patterson, Norman told him that Cooley had to be fired for failing to return to work. [D. 60 Ex. 18 at 25:1–4]. Cooley contends that ETHRA's inability to stick with one justification shows pretext.

These varied justifications do not show pretext. For one, there are not three justifications here but rather two. Cooley's inability to pass the fitness test caused her inability to return to work. They thus "revolve around a single idea" and so are considered only one justification. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 351 (6th Cir. 1998). For another, there is a reasonable explanation why Cooley's separation notice does not list insubordination: it was prepared

7

before the meeting. [D. 41 Ex. 5 at 36:9–37:16]. Though ETHRA has offered more than one justification for firing Cooley, they are grounded in the facts.

Next are ETHRA's alleged failure to offer Cooley leave without pay before firing her, its failure to question Dr. McElligott's conclusion that Cooley was unfit for work, and Holiway's failure to consult Norris before deciding to fire Cooley. But for the same reasons that these do not suggest retaliatory intent, they do not suggest pretext. *See supra* Subsection II.A.2.

Fifth is an email that Patterson sent Norman. When Norman asked Patterson what happened to Cooley, Patterson responded, "It is not a work related injury and I can't say for certain if she has an injury at all if you know what I mean." [D. 41 Ex. 16 at 1]. While Patterson's response rings of disbelief, Patterson was not a decision-maker in the process of firing Cooley. Indeed, nothing in the record shows that he was at all involved in Holiway's decision to fire Cooley. Statements by non-decision-makers are useful for proving pretext only when they suggest a discriminatory atmosphere. *See Ercegovich*, 154 F.3d at 356. One stray remark by someone who was not involved in the decision to fire Cooley does not establish a discriminatory atmosphere.

Finally, Cooley points to the temporal proximity between her attempted return to work and her termination. But while temporal proximity alone can make out a prima facie case of an FMLA violation, it cannot alone show pretext. *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 396 (6th Cir. 2017). Based on the evidence Cooley has presented, a jury could not reasonably find that she was fired for a discriminatory reason, rather than for her inability to return to work. Her FMLA claims must be dismissed.

## III

Finally, no reasonable jury could find that ETHRA violated the Americans with Disabilities Amendments Act by failing to accommodate her thirty-pound restriction. Failure-to-accommodate claims do not fall under the *McDonnell Douglas* framework because they "necessarily involve direct evidence (the failure to accommodate) of discrimination." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). Instead, Cooley must show that

- she had a disability;

- she was otherwise qualified for her position; and

- ETHRA either refused to make a reasonable accommodation for her disability or took an adverse employment action against her solely because of her disability.

*Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997). The first and second elements are disputed.

No reasonable jury could find that Cooley was otherwise qualified for her job as a driver. As explained in Subsection II.A.2, Cooley could work as an ETHRA driver only if she had been deemed fit to return to work. When she was fired, she had not been deemed fit. Thus, when she was fired, she could not work as an ETHRA driver. *See King v. Mrs. Grissom's Salads, Inc.*, 187 F.3d 636, 1999 WL 552512 (6th Cir. 1999) (unpublished). As a matter of law, Cooley's failure-to-accommodate claim fails on the second element.

To be sure, and as Cooley notes, extra leave can sometimes be a reasonable accommodation. *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998). But "additional leave is an objectively unreasonable accommodation where an employee has already received significant amounts of leave and has demonstrated no clear prospects for recovery." *Wil-*

9

*liams*, 847 F.3d at 394. Cooley has offered no evidence suggesting that she would alter her painkiller use so as to make her fit to be an ETHRA driver. There is no evidence that this would have been a reasonable accommodation for ETHRA to offer.

Finally, Cooley argues that ETHRA wrongly failed to engage with her to determine if a reasonable accommodation could be made for her disability. Usually, the employer must "initiate an informal, interactive process" with the employee if necessary to find a reasonable accommodation for the employee's disability. 29 C.F.R. § 1630.2(o)(3). Even if ETHRA failed to work with Cooley, however, "an employer's failure to engage in the interactive process is actionable only if the employee can demonstrate that she was qualified for the position." *Williams*, 847 F.3d at 395. Cooley has not shown that she was qualified to be a driver, and so any failure by ETHRA to work out an accommodation with her is irrelevant. Her failure to accommodate claim must be dismissed. The Court takes no position on whether Cooley was disabled. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

\* \* \* \* \*

When Cooley requested FMLA leave for back surgery, ETHRA granted it. When Cooley wanted to return to work after using up her FMLA leave, ETHRA made her go through a legally required physical exam given by a certified doctor. The doctor found that, because of Cooley's painkiller use, she was not ready to return to work as a driver. Based solely on the exam result—and not the reason for the result—Cooley was fired. Cooley has not shown that an illegal reason was behind her termination, and she has not shown that she was qualified to work as a driver but for her lifting restriction. For these reasons, ETHRA's motion for summary judgment is **GRANTED**, and Cooley's is **DENIED**. This case is **DISMISSED with prejudice**.

10

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**